IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NICOLE HAWKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:19CV1253 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Nicole Hawkins ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI in December 2016, alleging a disability onset date of December 15, 2015. (Tr. at 268, 787, 793-94.)[1] Her applications were denied initially (Tr. at 584-629, 673-83) and upon reconsideration (Tr. at 630-63, 686-703). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 704-05.) On October 15, 2018, Plaintiff, along with her attorney,

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #10].

attended the subsequent video hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 268.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from December 15, 2015 through the date of the decision (Tr. at 279-80), and, on November 9, 2019, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 3-9).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, *see* 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 271.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> [o]besity, cervical degenerative disc disease with radiculopathy, left shoulder adhesive capsulitis, major depressive disorder, anxiety disorder, obsessive compulsive disorder, personality disorder and migraine headaches[.]

(Tr. at 271.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 271-74.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, further limitations:

> she can frequently handle, finger and feel, push and pull with the left upper extremity and occasionally reach overhead with the left upper extremity. [Plaintiff] can frequently push and pull or operate foot controls with both lower extremities. [She] can frequently kneel, crouch, stoop, and crawl, can frequently climb stairs and ramps, can occasionally climb ladders, ropes and scaffolds, and can occasionally be exposed to vibrations, unprotected heights and moving machinery parts. She requires a moderate noise work environment, as defined in the DOT and SCO. [Plaintiff] is able to understand and remember simple

5

instructions, make simple work related decision, carry-out simple instructions, can occasionally deal with changes in a routine work setting, and can occasionally deal with coworkers and the public.

(Tr. at 274-75.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform her past relevant work as a hair stylist. (Tr. at 278.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 278-79.)

Plaintiff now contends that the ALJ erred in two respects. First, she argues that the ALJ's RFC assessment failed to properly account for Plaintiff's moderate limitation in concentration, persistence, or pace, as required by <u>Mascio v. Colvin</u>, 780 F.3d 632, 638 (4th Cir. 2015). Second, Plaintiff challenges the ALJ's finding at step five. In particular, Plaintiff contends that the vocational expert's testimony identifying three representative occupations as being within Plaintiff's RFC conflicts with the job requirements set out in the <u>Dictionary of Occupational Titles</u> ("DOT") in violation of the Fourth Circuit's holding in <u>Pearson v. Colvin</u>, 810 F.3d 204, 210 (4th Cir. 2015). For the reasons set out below, the Court concludes that remand is required with regard to Plaintiff's second contention, and the Court therefore need not reach the additional issue raised by Plaintiff.

The Fourth Circuit Court of Appeals has recognized that an ALJ has an affirmative "duty to make an independent identification of apparent conflicts" between vocational expert ("VE") testimony and the provisions of the DOT, regardless of whether a conflict is identified by the VE. <u>Pearson</u>, 810 F.3d at 208-09, 210. In <u>Pearson</u>, a VE testified that a claimant was

6

capable of performing three occupations. Id. at 210. For each of the three occupations, the DOT listed frequent reaching as a requirement. Id. However, both the claimant's RFC and the hypothetical question based upon it specified that the claimant's non-dominant arm could only occasionally reach upward. Id. Based on the DOT's broad definition of reaching (i.e., "[e]xtending hand(s) and arm(s) in any direction") the Fourth Circuit held that the occupations identified by the expert may require frequent bilateral overhead reaching. Id. at 210-211 (internal quotation omitted). Because of the apparent conflict between the VE's testimony and the DOT, the ALJ was required to elicit a reasonable "explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching," before relying on the expert's testimony. Id. at 211. The Fourth Circuit also clarified that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Id. at 209-11; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

Here, the VE identified the jobs of office helper (DOT 239.567-010, 1991 WL 672232), housekeeper (DOT 323.687-014, 1991 WL 672783), and mail sorter (DOT 209.687-026, 1991 WL 671813) as jobs a hypothetical claimant with the same RFC as Plaintiff could perform. (Tr. at 279, 549.) Plaintiff correctly points out that all three jobs identified by the VE and relied upon by the ALJ require frequent reaching according to the DOT. However, as in Pearson, Plaintiff's RFC limited her to no more than occasional overhead reaching with her left arm. (Tr. at 274.)

7

Also, as in Pearson, the ALJ failed to identify the apparent conflict between Plaintiff's reaching limitations and the VE's testimony. After identifying the three jobs set out above, the VE explained that the ability of the hypothetical claimant to interact with the public, coworkers, and supervisors was outside the scope of the DOT, and that he based his testimony as to these job requirements on his "over 20 years of experience." (Tr. at 548-49.) When the ALJ asked whether his "testimony [was] otherwise consistent with the DOT," the expert responded, "Yes, judge." (Tr. at 549.) However, "an ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]." Pearson, 810 F.3d at 208 (internal quotation marks omitted). Instead, "[t]he ALJ independently must identify . . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]." Id. at 209. Here, there is no evidence that the ALJ ever made such an identification.

Later in the hearing, the VE was cross-examined by Plaintiff's counsel, who asked the following:

> Q: If the hypothetical individual was further limited in reaching to occasional reaching [in] all other direction[s] with the left upper extremity in addition to overhead, what effect, if any, would that have on the representative work you identified?
>
> A: Is this hypothetical person, counselor, right or left-hand dominant?
>
> Q: They are right-hand dominant.
>
> A: Based on my experience it would not have any.

(Tr. at 551-52.) Defendant, relying on this exchange, now contends that the record demonstrated a basis for relying on the VE's testimony rather than the DOT.

8

However, the Middle District recently considered a nearly identical argument in Fogleman v. Saul, No. 1:19CV78, 2020 WL 1929072, at *10 (M.D.N.C. Apr. 21, 2020) (Auld, J.), and concluded that the ALJ "neither sufficiently identified nor resolved the apparent conflict at issue." In Fogleman, as here, the Court noted that "[t]he VE's testimony, pieced together from direct and cross-examination, reflects that she believed that none of the three jobs she cited required more than occasional overhead reaching with the non-dominant arm." Id. Critically, "[h]owever, . . . the VE never specifically acknowledged the apparent conflict between the DOT's descriptions for those jobs as involving frequent or constant reaching in any direction and the hypothetical's restriction to occasional overhead reaching, stating only, generically, that '[a]ny factor which is simply not addressed by the DOT are [sic] based on my training and experience.'" Id. (internal citation omitted). The Court therefore held that the ALJ "reversibly erred by failing to identify and resolve the apparent conflict between the VE and the DOT regarding the reaching requirements of the jobs in question." Id.

Similarly, in the case at hand, neither the VE nor the ALJ acknowledged any discrepancy between the VE's testimony and the DOT, let alone provided an explanation, generic or otherwise, reconciling this conflict. (Tr. at 279, 549, 551.) Thus, the VE's testimony was insufficient to (1) identify and (2) resolve the apparent conflict regarding the reaching requirements of the jobs in question, and critically, the ALJ failed to identify or resolve the apparent conflict.

As a result, the undersigned recommends that this case be remanded to the Commissioner for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g). Because the

prior determination will be vacated, the ALJ on rehearing can consider any of the additional matters raised by Plaintiff, and the Court need not reach those issues at this time.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. # 15] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. # 12] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 17th day of February, 2021.

                                                                       /s/ Joi Elizabeth Peake
                                                    United States Magistrate Judge